## Barclay *et al. versus* Lewis.

1. A testator gave all his estate to trustees to invest the proceeds at their discretion; out of the income to pay annuities specified, to each of his sons during their lives, the balance of the income for the use of his wife and daughter for their lives as the wife might wish; any of the income not so used, to be invested by the trustees, permitting the wife to use part of the income for the sons; " the fund after having been (so) administered" to be. held by the trustees after the death of the wife for the benefit of the daughter; " the income to be applied to her use during her life." After the death of the wife and daughter " my estate to be held in trust for the benefit of the children of my sons and daughter should they have any, and until said children shall be twenty-one years of age and then be equally divided among said children." *Held*, 1. That the trust remained during the lives of his sons as well as of his wife and daughter: 2. That the children of the sons and daughter took by purchase and not by limitation: 3. That the children's title to the fund vested at their birth: 4. That birth was not a contingency too remote to be unlawful.

2. The daughter died unmarried and without issue and the mother also died, the sons surviving, neither of whom had then any child, one was afterwards born. *Held*, that the fund did not vest in the sons.

3. The rule that a remainder requires a particular estate, does not apply to trusts. Per HARE, P. J.

4. In order to bind a trust by a decree, notwithstanding there be many limitations, it is sufficient to bring the trustee before the court and him in whom the first remainder is vested; and all that may come after although not *in esse*, will be bound. *Id.*

January 11th 1871. Before THOMPSON, C. J., READ, AGNEW and WILLIAMS, JJ. SHARSWOOD, J., at Nisi Prius.

Error to the District Court of *Philadelphia:* No. 285, to January Term 1870.

In the court below this was an amicable action of debt and case stated, in which Herman B. Barclay and James C. Barclay were plaintiffs and S. Weir Lewis was defendant. The facts agreed in the case stated are as follows, viz.:—

"John L. Barclay died in the year 1860, seised in his demesne as of fee of and in an undivided moiety of a messuage and lot of ground, situate on the east side of Third street, &c., containing, &c., having first made and published his will, bearing date the 12th day of April, A. D. 1860, duly proved and registered in Fayette county, Kentucky, a copy of which said will is hereto annexed,

to be taken as part of this case stated. The said decedent left him surviving his widow, Lucy M. Barclay, a daughter, Fanny B. Barclay, and two sons, Herman B. Barclay and James C. Barclay, the plaintiffs in this suit. In the year 1860 the said widow and daughter both died. The daughter died unmarried and intestate, and the plaintiffs are the heirs at law as well of their said father as of their said mother and sister. At the time of the decease of the survivor of them, the said mother and sister of plaintiffs, there was no child born of said sons or daughter of testator. Since that time the plaintiff H. B. Barclay has married and had a child born, who is now living.

"The defendant, S. Weir Lewis, is indebted for rent for said moiety of said premises to the 4th day of May 1869, after deducting taxes, charges and expenses by him paid, the sum of $281.20. The trustees named in said will are still living. If the court should be of opinion that under the said will of John L. Barclay, deceased, and by the decease of the said widow and daughter of testator, as above stated, the said undivided moiety of said premises vested in said plaintiffs in fee, then judgment to be rendered in favor of said plaintiffs for said sum of $281.20, otherwise for defendants."

The material parts of the will are the following :—

"Item 3d. I will, devise and bequeath all my estate real, personal and mixed, of whatever kind and sort whatever, including whatever may hereafter become mine, to my brother, James M. Barclay, to my friends, John Jackson and John B. Tilford, in trust, for the purposes, uses and benefits hereinafter specified.

"Item 4th. I direct that my residence shall be sold and another purchased for my wife to suit her, when and where she may wish, of less value, and that any of my servants may be sold if decided upon, by my trustees, with my wife's consent.

"Item 5th. I direct that the sale of my furniture, horses, carriage and all personal property in or appertaining in any manner to my residence, shall be made as my wife may direct, and she may retain whatever thereof she will.

"Item 6th. I direct that the trustees herein named and their successors, shall invest all the proceeds of my estate, not hereinbefore provided for the payment of my debts and the comfortable establishment of my wife, in notes, secured by mortgage or lien on real estate in Kentucky, or in notes on loan to owners of real estate. And if such mortgage security and notes of owners of real estate, with good security, cannot be obtained, my trustees shall have discretion to loan or otherwise invest.

"Item 7th. I direct that the income of my estate, invested as above directed, shall be for the use and benefit during their natural lives of my wife Lucy M. Barclay, my daughter Fanny B. Barclay, and my sons, Herman B. Barclay and James C. Barclay, in the following manner :—

[Barclay *v.* Lewis.]

" Item 8th. I direct that out of the income · of the before-directed investment, my trustees shall pay to and for the use and benefit of my son, Herman B. Barclay, annually the sum of ·$500 during his natural life.

" Item 9th. I direct that out of the income of said investment my trustees shall pay to and for the use of my son, James C. Barclay, annually the sum of $600 during the natural life of said son.

" Item 10th. I direct that the balance of the income of my estate, after the annual payments of $1100 as directed in 8th and 9th clauses of this will, shall be appropriated to the use and benefit of my wife and daughter, as my wife may wish, during their natural lives, and if any part of the income herein designated for my wife shall not be used for herself and daughter, my trustees shall invest said overplus.

" Item 11th. I direct that my wife shall have the right to use a part of the income set apart for her use and benefit, for either or both of my sons, if she shall deem it proper.

" Item 12th. The trust estate created and specified in the 3d item of this will, after having been administered as above directed, shall be held in trust by the trustees and their successors at and after the death of my wife, for the benefit of my daughter, Fanny B. Barclay. The income to be applied to her use during her natural life.

" Item 13th. I direct that after the death of my wife and my daughter Fanny, my estate shall be held in trust for the .benefit of the children of my sons and daughter, should they have any, and until said children shall be twenty-one years of age, and then equally divided between and among said children.

" Item 15th. I direct that the trustees, James M. Barclay, John Jackson and John B. Tilford, shall have the power to appoint their successors. In case of the death or resignation of either of them, the survivor or survivors shall have power to name successors.

" Item 16th. I appoint my brother, James M. Barclay, and my friends, John B. Tilford and John Jackson, my executors." * * *

Hare, P. J., delivered the following opinion of the court:—

" It is a well-known rule, that when a future estate in land is so limited or devised that it may take effect as a remainder, either vested or contingent, it shall never be construed to be a springing or shifting use, or executory devise : Lewis on the Law of Perpetuity 113.

" The plaintiff contends that this rule applies to the devise set forth in the case stated. It is a gift in trust, *inter alia*, to collect and pay over the income of the estate to the testator's wife and daughter, and from and after their decease in trust for the benefit of the children of his sons and daughter, should they have any,

[Barclay *v.* Lewis.]

until the said children shall have attained the age of twenty-one years, then to be divided equally among them. The wife and daughter died, and afterwards a child was born to one of the sons. This was the only grandchild; and if the construction which the plaintiff contends for is adopted, it will defeat the object which the testator had in view. His intention was to provide for all his grandchildren, without regard to the time of their birth. If the limitation is construed as a contingent remainder, it can take effect only in favor of those who were born while the mother and daughter were alive, and in the actual state of the case will wholly fail. A contingent remainder must vest when the particular estate determines, or it cannot vest at all. It is not necessary to inquire whether the courts would now carry the rule to this extent, when effect might be given to the purpose of the testator, by reading the limitation as an executory devise, because the case is with the defendant on another ground. The rule that a remainder must be sustained by a particular estate does not apply to trusts. It grew out of the doctrine of the feudal law, that there must always be a tenant to the *præcipe*, or, in other words, some one who could perform the public and private services, by which men then held their lands. When an estate was given in trust, the trustee was answerable for these before the law, and it was immaterial that the beneficial interest lay elsewhere. The courts were therefore free to give effect to any future or executory devise which did not contravene the rule against perpetuities. The doctrine was established as far back as Hopkins *v.* Hopkins, 1 Atkyns 590. The ground, said Lord Hardwicke, on which the common law requires the vesting of the contingent remainder, either during or *eo instanti* the particular estate determines, is that a freehold cannot be in abeyance, that there must be a tenant of the freehold to perform services, to answer to a *præcipe*, and all writs to be brought concerning the realty, or otherwise there would be a failure of public service and public justice. But this holds not in the case of an equitable estate; the trustee is tenant of the freehold, to perform services, &c.

"But it has been objected, there is equal mischief if he is not liable to answer demands, and to be bound by decrees in this court. That will not follow, for if there are ever so many contingent limitations of a trust, it is an established rule, that it is sufficient to bring the trustees before the court, together with him in whom the first remainder of the inheritance is vested, and all that may come after will be bound by the decree, though not *in esse*, unless there be fraud and collusion between the trustees and the first person in whom a remainder of inheritance is vested; but that is of no weight, for fraud and collusion will unravel a thing as well at law as equity. This case was followed in Habergham *v.* Vincent, 2

[Barclay *v*. Lewis.]

Ves. 204, and as these decisions are directly in point, judgment is entered on the case stated for the defendant."

The plaintiffs took out a writ of error, and assigned for error, entering judgment for the defendant.

*G. T. Bispham* and *Cadwalader Biddle*, for plaintiffs in error.— In order that the rule that the legal estate in general trustees will support contingent remainders should have application, the trust estate must be co-extensive with the limitations of the will. The trust being only during the continuance of the life interest, after the death of the life-tenant the trust would end and the remainder fall: Hopkins *v*. Hopkins, 1 Atkyns 588; Chapman *v*. Blisset, Cas. Temp. Talbot 145; Fearne on Cont. Rem. 304; Barnett's Appeal, 10 Wright 392; Steacy *v*. Rice, 3 Casey 81; Bacon's Appeal, 7 P. F. Smith 512; Hill on Trustees 239.

*C. S. Pancoast*, for defendant in error.—The will imposes active duties on the trustees, other and beyond those concerning the wife and daughter, that require the legal estate to remain in them. "Children" here is not a word of limitation: 2 Jarman on Wills 111. The trustees must hold the estate not only for the wife and daughter, but also for the sons: Kennick *v*. Beauclerk, 3 B. & P. 175; Cadogan *v*. Ewart, 7 Ad. & E. 668; Naylor *v*. Anilte, 1 Russ. & My. 501; Chapman *v*. Blisset, Hopkins *v*. Hopkins, *supra;* Ashurst *v*. Given, 5 W. & S. 323; Brown *v*. Williamson, 12 Casey 339.

The general legal estate given the trustees for all the purposes of the will will be held to remain in them until said purposes are accomplished: Dodson *v*. Ball, 10 P. F. Smith 494; Barnett's Appeal, 10 Wright 399; Pullen *v*. Reinhardt, 1 Whart. 521; Rife *v*. Geyer, 9 P. F. Smith 395; Kay *v*. Scates, 1 Wright 39; Pye *v*. George, 1 P. Wms. 128; Mansell *v*. Mansell, 2 Id. 678; Moody *v*. Walters, 16 Ves. 302; Bescoe *v*. Perkins, 1 Ves. & B. 491; Garth *v*. Cotton, 3 Atk. 754; Habergham *v*. Vincent, 2 Ves. Jr. 209; Stansfield *v*. Habergham, 10 Id. 282; Fearne 304.

The opinion of the court was delivered, February 9th 1871, by

AGNEW, J.—The primary rule in the interpretation of wills is to determine the true intention of the testator, and if lawful to give it effect. If this great canon of interpretation be observed there will be little difficulty in applying to a will the law which governs the creation and transmission of estates. We shall then be less embarrassed by the artificial and difficult rules relating to contingent remainders, executory devises, and trusts. It cannot be doubted that John L. Barclay created a trust to be managed by the trustees named in his will, during the lives of his

wife, two sons and daughter. He gave his trustees for this purpose large powers to sell, lend on mortgage, or otherwise to invest and pay over the income of his estate in certain proportions to his wife, daughter and sons. The direction to the trustees to pay annuities of $500 and $600 to his sons, is expressly for and during life. He says that out of the income of the before-directed investment, his trustees shall pay to each annually the said sums. The "before-directed investment" is "shall invest all the proceeds of my estate, not hereinbefore provided for the payment of my debts," &c. It is clear, therefore, that the testator intended that the trust, which was by its nature and terms an active one, should remain during the lives of his sons as well as of his wife and daughter, for as to all he provided only for the payment of income, while all of his estate was to be invested. It was in terms "the balance of the income of my (his) estate after the annual payment" of the $500 and $600 to his sons, which he directed to be paid to his wife and daughter. And it was the income only which his daughter was to receive after the death of his wife for and during her natural life. As he could not know which of these objects of the payment of income would die first, while all of his estate was to be invested, it is evident he intended an active management of the trust to invest, preserve and pay over the income, to exist so long as any of the objects should survive. Then we come to the 13th item providing for the contingency of the deaths of his wife and daughter: "13th. I direct that after the death of my wife and my daughter Fanny, my estate shall be held in trust for the benefit of the children of my sons and daughter should they have any, and until said children shall be twenty-one years of age, and then equally divided among said children." The children here take not by limitation, or *per stirpes ;* but as purchasers in their own right, their title vesting at birth, but deferred in the time of enjoyment, until their arrival at full age. It is obvious that the trust and the investment as income must necessarily survive the death of the wife and daughter (leaving the sons surviving), in order to pay the annual income of $500 and $600 to the sons, and preserve the remainder for the children born or to be born. The legacy to the children was not to accrue at one fixed and independent period, or upon any contingency or condition other than birth, which would prevent it from vesting at birth or opening to receive after-born children. Birth was a contingency neither impossible nor too remote, and was therefore not unlawful. There is no reason then why the intent of the testator to provide absolutely for the children of his sons and daughter in equal proportions when arriving into life, should be set aside in favor of the sons to whom he clearly intended to give the annuities of $500 and $600 during their lives, and

nothing more.   It is impossible to deny the intention of the tes-
tator to create a continuing active trust, to remain during the
lives of his sons, and preserve the estate to their children in their
own right.   There being nothing too remote, contingent or un-
lawful in this provision, it is therefore not to be set aside by any
artificial or technical rules.   The law will support it, call it by
one name or another.   There is abundant authority for this to be
found in the opinion of the learned judge and in the citations of
the defendant in error.

Judgment is therefore affirmed.